# O'Bryan Bros. v. Davis.

*Motion to set aside Sale under Execution.*

1.  *Motion to set aside sale under execution; mere inadequacy of price*

[O'Bryan Bros. v. Davis.]

*not sufficient.*—When inadequacy of price is relied on as a ground for setting aside and vacating a sale under an execution, the inadequacy must be so gross as to create the presumption of fraud; and when the property sold is a stock of goods or other chattels, which have been subsequently disposed of, rendering it impossible to put the parties *in statu quo*, there must appear, in addition to the inadequacy of price, some fraud or illegality to justify the setting aside of such sale.

2. *Same; when sale voidable not void.*—Where, after a sale under execution, the highest bidder, who was declared the purchaser, informs the sheriff he would not comply with the terms of the sale, and the sheriff informs the plaintiff in execution, who made the next highest bid, that his bid would be excepted, to which plaintiff assented, and the sheriff thereupon made return upon the execution that the plaintiff was the purchaser at the amount of his bid, delivered him the property and returned the process into court, the levy having previously been regularly endorsed thereon, this action by the sheriff, though irregular, did not render the sale void, but voidable.

3. *Same; burden of proof.*—On a motion to set aside a sale under an execution which is not void, but merely irregular by reason of the manner in which the sheriff made said sale, the burden is on the movant to clearly show that such irregularity caused him material injury.

4. *Quaere* —Can a court properly entertain a motion to set aside a sheriff's sale of personal property under execution, unless under such peculiar circumstances that the property can be restored, and the parties placed *in statu quo*? Should not the defendant in execution, if injured by the fraud or oppression of the sheriff, be left to his remedy against the officer?

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. N. D. DENSON.

O'Bryan Brothers recovered a judgment against J. M. Davis in the circuit court of Bibb county, on May 24, 1892. Execution was issued upon said judgment, and levied upon certain property of the defendant, which was afterwards sold by the sheriff of said county. Thereupon the defendant, J. M. Davis, moved the court to set aside and vacate the said sale made by the sheriff, upon certain grounds, which are sufficiently stated in the opinion.

Upon the submission of this motion, upon the evidence, the court rendered judgment, adjudging that said sale was void, and of no effect; and ordering that the same be set aside and held for naught. The plaintiffs in judgment and execution now bring this appeal, and assign as error the rendition of said judgment.

[O'Bryan Bros. v. Davis.]

LOGAN, HARGROVE & VANDEGRAAFF, for appellants, cited *Ware v. Bradford,* 2 Ala. 676 ; *Holly v. Bass,* 68 Ala. 209 ; *Ray v. Womble,* 56 Ala. 32 ; *Hurt v. Nave,* 49 Ala. 459 ; *Draine v. Smelser,* 15 Ala. 423 ; *Wright v. Spencer,* 1 Stew. 576 ; *Savage v. Forward,* 7 Ala. 465 ; *Love v. Powell,* 5 Ala. 58 ; *Comming v. MacGill,* 2 Murphy's Rep. (N. C.) 357 ; *State v. Johnston,* 1 Hayw. (N. C.) Rep. 293.

WARD & JOHN, *contra,* cited Binmore on Sheriffs, § 181 ; Crocker on Sheriffs, § 495 ; Freeman on Void Judicial Sales, § 32 ; Rorer on Judicial Sales, § 1285 ; *Foster v. Mabe,* 4 Ala. 402; *Mobile Cotton Press &c. Co. v. Moore,* 9 Por. 679 ; *Ray v. Womble,* 56 Ala. 32 ; *Draine v. Smelser,* 15 Ala. 423; *Holly v. Bass,* 68 Ala. 209; Allen on Sheriffs, § 173 ; 2 Tidds Prac., § 1013 ; Code of 1886, § 649, subd. 6 ; § 2864, subd. 2.

HEAD, J.—We will dispose of this case upon the assumption that the circuit court may have properly entertained a motion to set aside a sheriff's sale of personal property, as the parties have not raised that question.

This appeal is from the order of the circuit court granting a motion to set aside a sheriff's sale of a stock of goods under execution in favor of O'Bryan Bros. against J. M. Davis ; the plaintiffs in the action being the purchasers. The grounds of the motion, as set forth in the writing filed, are, (1) that the sale was "illegal and oppressive and caused the said goods to be sold for about one-third of their real value ;" (2), "that said sale was not made at public outcry as required by law ;" (3), "that the sheriff, contrary to law, right and justice, sold said goods at private sale to the plaintiffs in execution, and at a price greatly disproportionate to their real value ;" (4), "that the plaintiffs directed and controlled the sheriff in making said sale in an illegal and oppressive way so as to wrong and oppress the defendant." We must confine our considerations to these grounds. We remark that the first, second and fourth grounds are defectively stated, in that the first fails to show wherein consisted the illegality and oppression in the manner of conducting the sale which caused the goods to be sold for less than their value. So, also, the fourth fails to show what illegality and oppression were practiced, or

in what way the defendant was wronged and oppressed. The second fails to show that the defendant was, in any wise, injured by the failure to sell at public outcry. But, objection was not made by the purchasers, and we will, as they did, leave the defects to be supplied or cured by proof of any available illegality or oppression, and consequent injury to defendant, if such proof has been adduced. It will be observed the motion itself, evidently, recognizes the rule so well settled in law, that mere inadequacy of price will not afford ground for vacating the sale. To have that effect the inadequacy must be so gross as to create the presumption of fraud.—*Ray v. Womble*, 56 Ala. 32; 12 Amer. & Eng. Encyc. of Law, 235; 22 *Ib.* 680-81. This is the rule in reference to real estate, and for greater reasons should it apply to chattels. Land is fixed and immovable, and it is generally easy, upon setting aside its sale, to place all parties *in statu quo*. Chattels are movable; consumable in use; often valuable to the possessor only for the purpose of sales, in parcels, to consumers. Possession is, at once, delivered to the purchaser, and the goods by him used, consumed or disposed of, according to their character, in reliance upon the ownership acquired by the purchase. The facts of the present case will illustrate: A stock of goods, valuable only for the purpose of sale at retail to consumers, was sold by the sheriff. The purchasers took immediate possession. Some four months thereafter elapsed before the defendant did, or could, move to set aside the sale. Meantime the purchasers sold the goods to a dealer in an adjoining county, who, it may be fairly supposed, has disposed of many of them. It is impossible to restore the *status quo*. Under these conditions, let the rule we have adverted to, be applied in all its force. There must appear then some fraud or illegality, coupled with inadequacy of price, to justify the ruling of the court. None of the affidavits, in our judgment, approach a showing of actual fraud, on the part of the sheriff or purchaser. They show a single irregularity. The sale was duly advertised showing the time and place. At the desire of the defendant it was duly and regularly adjourned. A considerable crowd attended. An auctioneer was employed, and at the proper hour and place the stock of goods was exposed to public sale to the highest bidder, for cash. There were several bidders. The

plaintiff in execution, whose debt amounted to over $1,000, bid $600. One Fancher bid $650; whereupon bidding ceased, and Fancher was declared the purchaser. The sheriff waited three or four hours upon him to complete his purchase by payment, when he appeared and made known that he would not comply with the terms of sale. The sheriff thereupon informed the attorney of the plaintiffs in execution, who had made for them the next highest bid—$600—that his bid would be accepted, to which the attorney assented; and the sheriff thereupon made return upon the execution that O'Bryan Bros. were the purchasers, at $600, and delivered the goods, and returned the process to court. The levy was regularly endorsed upon the execution. This action of the sheriff was irregular. Strictly, he should have made a regular re-sale, at some further day, on proper notice.—22 Am. & Eng. Encyc. of Law, pp. 600, 617. But the sale was not void, as the court below declared it be. Indeed, this remedy, by motion to vacate the sale presupposes and implies that it is voidable only. Who could contend, in a collateral proceeding involving the title acquired by the purchasers at this sale, that the judgment, execution and return of the levy and sale thereunder, with proof of possession delivered to the purchasers, would not show title in them which could not be overcome by proof of the irregularity and improper manner in which the sale was effected? Even in sales of real estate, under execution, the purchaser's title is made out by showing the judgment, execution and sheriff's deed; and this title could not be defeated, except in a direct proceeding for that purpose, by showing that the sheriff violated every direction of the statute regulating such sales.—*Ware v. Bradford*, 2 Ala. 676; 3 Brick. Dig. 452, § 63; *Foster v. Mabe*, 4 Ala. 402; *Fornier v. Curry*, Ib. 321. The sale then to O'Bryan Bros. was not void. It was irregular merely; and if it clearly appears that the irregularity caused the defendant material injury assuming the propriety of the remedy now invoked, the sale ought to be set aside. The burden is on the party moving, to show injury. We said also it must be clearly shown. This is a general rule, applicable to this remedy in all cases. It applies with very great force to this case, in view of the consideration to which we adverted when speaking of the inadequacy of

price.  If it were a question, merely, whether the evidence preponderates in favor of the allegation that the goods sold for less than their value, we would hesitate long before declaring that it does.  Each party introduced a number of affidavits.  The defendant, Davis, makes oath that the goods were worth $1,500.  He gives no description of their age, character or quality. B. L. Tucker bought the goods from O'Bryan Bros. His opinion is that they were worth $1,000.  He does not show what, if any, experience, he has had in such matters.  H. C. Fancher is the father of E. E. Fancher, who bid off the goods at $650.  He fixes the value at $1,500, but does not show that he has had any experience with stocks of goods.  E. E. Fancher says $1,250, but like the others does not attempt to qualify himself.  P. E. Fancher and J. M. Davis, Jr., were, and had been for several years, clerks in the store of the defendant. They assisted in making an inventory of the goods and swear that each article was put down at its fair value, and that the inventory amounted to about $1,700.  This inventory did not include certain specified goods, and P. E. Fancher swears that he afterwards assisted the sheriff in making a complete inventory, putting everything down at its fair value, and it showed $2,027. This is all the testimony of the defendants, as to value. For the purchasers, Bates, the sheriff, made an affidavit giving a full history of his acts and doings in connection with the sale.  His testimony, as well as that of M. J. Latham, another witness for the purchasers, goes far to show that the goods, in greater part, consisted of remnants of old stocks which had come down for six or seven years, through three successive firms doing business in the same house ; that they were odds and ends, old, shopworn and very unsalable.  Bates brings to view the testimony of defendant given in a chancery case about two years before, which strongly supports this conclusion.  The sheriff shows that about the first of June before the sale on July 22, Davis closed the store and it remained closed until the sale, during which time the goods had become very much damaged.  He swears that the inventory of $2,027 was made strictly at cost prices without regard to their actual value, and that he knew at the time, that they were so damaged by age, dust, dampness, and vermin they were not worth half

that sum. He shows that prior to the sale he made diligent effort to find a purchaser; saw many persons in various places, and urged them to be present at the sale, but in no case could he get an offer of over $600, and he swears that $600 was a fair valuation. Wm. T. Atkins, who shows himself to be an expert in matters of this kind, of 27 years' experience, examined this stock of goods with the view of buying them for O'Bryan Bros., and he swears that $600 were all they were worth. He describes the goods and shows they were very old, and many of them shopworn and unsalable. Very few of them had been purchased within a year prior to the sale. After the sale he undertook to dispose of the goods for O'Bryan Bros., and tried over his whole territory to find a purchaser. 'He received the following bids from parties who knew the stock well: L. & E. Lamar, Selma, $500; A. P. Howison, Randolph, $500; B. L. Tucker, Randolph, $550; W. B. Reynolds, Montevallo, $550 cash, or $587.50, part cash and part on time. He says he told defendant if he could arrange with any of his friends to take the stock at $600 he could do so; and he had over a month to make such arrangements. M. F. Gardner swears that he is and has been for twelve years engaged in buying and selling goods, and has had a great deal of experience in the merchandise business generally. He was the auctioneer who made the sale for the sheriff. He says there were about 25 persons present at the sale. He states that in his opinion the stock was composed largely of odds and ends which he regarded in a great measure worthless, and considerably shelf worn, and that he would not have paid more than $600 for the stock. He made a personal inspection of the bulk of the stock. There were at the sale several experienced merchants, among them Allen P. Howison and J. W. Bland, Jr., who were bidders. M. J. Latham, the present sheriff of Bibb county, says $600 was a fair valuation for the goods. He was well acquainted with them. A. P. Howison, an experienced merchant, was present at the sale, and tried to buy the stock. He swears, in his judgment, it was not worth over $650. This is substantially the evidence for the purchasers. Comment is unnecessary. It cannot be insisted that it is clearly shown that the defendant was injured. It is

[Banks v. Speers *et al.*]

argued that the goods ought not to have been sold *en masse*, but should have been sold off at retail. The only evidence on that subject is the affidavit of Atkins who swears that, in his opinion, they would not have realized any more by that method of sale. Besides, defendant was present at the sale and made no objection, and did not request that they be sold in that way. Evidently, the court below did not regard the alleged inadequacy of price as established, but acted on the mistaken conception that the sale was void. The judgment of the circuit court is reversed, and a judgment will be here rendered overruling the motion to set aside the sale.

We inquire whether a court may properly entertain a motion to set aside a sheriff's sale of personal property under execution, unless under such peculiar circumstances that the property can be restored and the parties placed *in statu quo ?* Should not the defendant in execution, if injured by the fraud or oppression of the sheriff, be left to his remedy against the officer?

Reversed and rendered.